UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REBECCA FLEMING and CHARLES FLEMING,

    Plaintiffs,

v.                                                  Case No.: 8:17-cv-2346-T-33MAP

WILMA BAILEY, doing business as
STAR-LITE MOBILE PARK,

    Defendant.
_____/

**FIRST AMENDED COMPLAINT**
and
<u>**JURY DEMAND**</u>

Plaintiffs, Rebecca Fleming ("Rebecca") and Charles Fleming ("Charles"), by and through their undersigned attorneys, hereby file this First Amended Complaint for injunctive and declaratory relief, damages, costs, and attorneys' fees against Defendant, Wilma Bailey, doing business as Star-Lite Mobile Park ("Star-Lite"), and as good grounds state as follows:

**PRELIMINARY STATEMENT**

1.    This action arises as a result of Defendant's discriminatory actions perpetrated against Rebecca and Charles with respect to the use, exercise, enjoyment and potential sale of their mobile home at the Star-Lite Mobile Park in Largo, Florida (the "Dwelling").

2.    Specifically, Defendant has violated the Fair Housing Act by, among other things, harassing, threatening, retaliating and interfering with Rebecca and Charles's exercise and enjoyment of the rights granted to them under the Fair Housing Act; discriminating against them in the provision of services and facilities; and making statements, rules and regulations that indicate a preference, limitation, and discrimination based on handicap.

**JURISDICTION AND VENUE**

3. Jurisdiction is invoked pursuant to 42 U.S.C. § 3613(a), in that Plaintiffs assert their claims of housing discrimination in a civil action, and also pursuant to 28 U.S.C. §§ 1331, 2201 and 1343(a)(4), in that this is a civil action seeking to redress the deprivation of the right to fair housing secured to Plaintiffs by the Fair Housing Act.

4. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiffs seek injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the events and/or omissions giving rise to the claims herein occurred in this district, and the Defendant resides and/or conducts business in this district.

**PARTIES**

6. Plaintiff, Rebecca Fleming, is disabled within the meaning of the Fair Housing Act, as she suffers from a physical disability, which limits several of her major life activities, including, but not limited to, her ability to walk, balance, and retrieve items, and which causes her chronic pain. Rebecca has a service dog that is necessary to help alleviate her disability.

7. Plaintiff, Charles Fleming, is disabled within the meaning of the Fair Housing Act, as he suffers from a physical disability, which limits several of his major life activities, including, but not limited to, his ability to walk, balance, and retrieve items, and which causes him chronic pain. Charles has a service dog that is necessary to help alleviate his disability.

8. Defendant, Wilma Bailey, d/b/a Star-Lite Mobile Park, is the owner of Star-Lite Mobile Park in Largo, Florida. Defendant promulgates and enforces the rules and regulations governing the sale and use of mobile homes at Star-Lite Mobile Park, and, at all relevant times, has engaged in the discrimination complained of herein.

**FACTUAL ALLEGATIONS**

  I.  *Handicap and Disability Discrimination, Retaliation and Harassment by Defendant*

9.  Rebecca and Charles are retired U.S. Army Veterans who both suffer from physical disabilities that severely limit their ability to walk, balance, and retrieve items, and which cause them chronic pain.

10. Rebecca and Charles each have a service dog that is necessary to help alleviate their disabilities, including, but not limited to, providing physical support and assistance with balance and stability, and assistance with retrieval of items unreachable due to their disabilities.

11. Rebecca and Charles's service dogs are both trained Boxers, which weigh roughly 75 pounds each. The size and weight of Rebecca and Charles's service dogs are necessary in order to provide them with sufficient physical support and assistance with balance and stability, and in order to help alleviate their disabilities.

12. In 2014, Rebecca and Charles purchased a trailer at Star-Lite, having been forced into early retirement due to their medical impairments. Both Rebecca and Charles loved the unique location of Star-Lite to the local beaches, schools and churches, and initially appreciated the welcoming atmosphere at the mobile home park.

13. That atmosphere quickly changed, however, when Rebecca and Charles began to prepare to move into the Dwelling, and submitted a reasonable accommodation request to Star-Lite in January 2017 to allow them to bring their two service dogs to live with them at Star-Lite.

14. Despite Rebecca and Charles's obvious need for the reasonable accommodation, and despite providing Star-Lite with letters from multiple physicians and complete veterinary and vaccination records, Star-Lite denied Rebecca and Charles's reasonable accommodation request, due solely to the size and breed of Rebecca and Charles's service dogs.

15. Specifically, Star-Lite denied Rebecca and Charles's reasonable accommodation request due to its Rules and Regulations, which state:

> No therapeutic pet shall be allowed if its adult weight should be in excess of 35 pounds … Certain breeds of dogs shall not be allowed, under any circumstances, including but not limited to Pit Bulls, German Shepards *[sic]*, Rottweilers, Bull Dogs, Boxers or any dog breed for or used for hunting.

16. As a result of this denial, Rebecca and Charles filed a housing discrimination complaint with the Pinellas County Office of Human Rights ("OHR") on February 3, 2017, alleging that Star-Lite's denial of their reasonable accommodation request constituted a violation of the Fair Housing Act.

17. In March 2017, Rebecca and Charles entered into a conciliation agreement with Star-Lite with regards to their housing discrimination complaint. *See* Conciliation Agreement, attached as Exhibit 1.

18. Because Defendants had asserted that they had already granted Rebecca and Charles a one-time exception to bring their two service dogs to live with them at Star-Lite, Rebecca and Charles's OHR conciliation agreement did not address the legality of Defendant's rules and regulations, and dealt with only two discrete complaints: Rebecca and Charles's ability to use hand and voice commands for their service animals when off-leash, and Rebecca and Charles's agreement to remove a temporary fence that had been installed by Rebecca and Charles for their service animals.

19. Following this agreement, Rebecca and Charles were able to keep their service dogs in the Dwelling, and looked forward to continuing to live and enjoy the facilities at Star-Lite.

20. Rebecca and Charles's enjoyment was unfortunately short-lived. Within only a few short months following the execution of the Pinellas County OHR conciliation agreement,

Rebecca and Charles began hearing rumors that Star-Lite was informing other residents that they were "causing trouble," and intentionally encouraging an atmosphere of hostility towards Rebecca and Charles within the mobile home park.

21. This harassing and retaliatory behavior intensified on June 30, 2017, when Rebecca and Charles received a Notice of Violation of Park Rules and Regulation from Star-Lite and its attorney, David A. Luczak, which included descriptions of two alleged "violations" of Star-Lite's Rules and Regulations.

22. The first "violation" described in Star-Lite's June 28, 2017 notice alleged that on or about June 21, 2017, Charles confronted a plumber who was at Star-Lite to repair a water main break, hindered the plumber's ability to drive through the mobile home park, and hit a mirror on the door of the plumber's vehicle while "verbally accosting the plumber."

23. The notice did not include any statements or other documentation corroborating this allegation.

24. This first "violation" is an entirely inaccurate account, and was brought against Rebecca and Charles for no reason other than as retaliation for Rebecca and Charles's previously filed housing discrimination complaint with Pinellas County OHR, and in order to intentionally interfere with Rebecca and Charles's exercise and enjoyment of the rights granted to them under the Fair Housing Act.

25. At no time did Charles assault the plumber who was at Star-Lite on June 28, 2017, or his vehicle, whether physically or verbally, nor did Charles hinder the plumber's ability to drive anywhere in the mobile home park.

26. The second "violation" described in Star-Lite's June 28, 2017 notice alleged that on or about June 26, 2017, Rebecca and Charles's service dogs were "running loose" in the

mobile home park and "chased a resident of the Park who was riding his bicycle" while the dogs "growl[ed], bark[ed], and snap[ped] at him."

27. Again, the notice did not include any statements or other documentation corroborating this allegation.

28. This second "violation" is entirely fictitious, and was brought against Rebecca and Charles for no reason other than as retaliation for Rebecca and Charles's previously filed housing discrimination complaint with Pinellas County OHR, and in order to intentionally interfere with Rebecca and Charles's exercise and enjoyment of the rights granted to them under the Fair Housing Act.

29. In reality, neither Rebecca nor Charles were at Star-Lite on June 26, 2017, as both were required to spend the day at various doctor's appointments. Contrary to Star-Lite's false and uncorroborated allegations, both of Rebecca and Charles's service dogs were confined within Rebecca and Charles's unit on June 26, 2017, and were only allowed out of the unit and into Rebecca and Charles's backyard, in order to use the bathroom, while under the constant supervision of a close friend who often cares for Rebecca and Charles's service dogs while they are away.

30. Star-Lite's June 28, 2017 notice further stated that Rebecca and Charles had seven days from the date of delivery of the notice within which to "bring [themselves] in compliance" with Star-Lite's Rules and Regulations, and threatened to terminate Rebecca and Charles's tenancy with Star-Lite and institute eviction proceedings against them, if they did not comply.

31. As a direct result of this discriminatory and harassing behavior, Rebecca and Charles have been forced to live in constant and daily fear of additional retaliatory behavior and harassment, including the eviction proceedings expressly threatened by Defendants and the

6

threatened loss of their home. This emotional distress has significantly and negatively impacted their respective mental health conditions and caused additional injury, including, but not limited to, mental anguish, anxiety, the deterioration of their mental health conditions and additional medical and mental health treatment and costs directly related to the Defendants' actions.

32. As noted above, these incidences of discrimination and harassment were not discussed as part of Rebecca and Charles's prior complaint against the Defendants through Pinellas County OHR, as they had not yet occurred, and as such Rebecca and Charles's allegations and fair housing claims as stated herein were not covered by the OHR conciliation agreement previously referenced and attached hereto.

33. Disheartened, saddened, anxious, and fearful, Rebecca and Charles therefore determined that proceeding with the instant legal action was necessary to protect them from the new and ongoing discrimination and harassment they have been, and continue to be, subjected to, including, but not limited to, any and all newly threatened retaliatory termination and/or eviction proceedings that have been threatened by Star-Lite, and based on fictitious and manufactured events.

    II.    *Handicap and Disability Discrimination in Defendant's Rules and Regulations*

34. In addition to this harassing and retaliatory behavior, Rebecca and Charles further remain subject to several provisions of Star-Lite's written Rules and Regulations that contain overtly discriminatory language and prevent Rebecca and Charles from the full and equal use and enjoyment of Star-Lite's facilities, due to their handicap, in violation of federal Fair Housing laws.

35. Paragraph 19 of the section of Star-Lite's Rules and Regulations, for example, entitled "RESPONSIBILITIES", explicitly states that "[t]herapeutic animals are not allowed in

7

any common area, recreational facility or park office," without exception. *See* Star-Lite's Rules and Regulations, attached as Exhibit 2.

36.  As an initial matter, Rebecca and Charles were shocked and insulted that Star-Lite's Rules and Regulations contained such overtly discriminatory language, in blatant disregard for federal Fair Housing laws.

37.  More importantly, this discriminatory rule provision prevents Rebecca and Charles from the full and equal use and enjoyment of Star-Lite's facilities, due to their handicap, in direct violation of federal Fair Housing laws.  As a result of this provision, Rebecca and Charles cannot fully and equally use or enjoy a multitude of common areas at Star-Lite that they both need and desire to access, including, but not limited to, the laundry facilities, trash area, club house, park office, and even their own mailbox.

38.  In addition to the discriminatory provision regarding the areas of Star-Lite in which service animals are forbidden, as noted above, paragraph 19 of the section of Star-Lite's Rules and Regulations entitled "RESPONSIBILITIES" further states:

> No therapeutic pet shall be allowed if its adult weight should be in excess of 35 pounds … Certain breeds of dogs shall not be allowed, under any circumstances, including but not limited to Pit Bulls, German Shepards *[sic]*, Rottweilers, Bull Dogs, Boxers or any dog breed for or used for hunting.

39.   As an initial matter, Rebecca and Charles were again shocked and insulted that Star-Lite's Rules and Regulations contained such overtly discriminatory language, in blatant disregard for federal Fair Housing laws.

40.  More importantly, this discriminatory rule provision prevents Rebecca and Charles from the full and equal use and enjoyment of Star-Lite's facilities, due to their handicap, in direct violation of federal Fair Housing laws.  While Rebecca and Charles had previously been granted a one-time exception to this rule, to allow their current service dogs to live with them at

Star-Lite and as a result of their filing of a housing discrimination complaint with the Pinellas County OHR, Rebecca and Charles's service animals have a relatively short life span in accordance with their breed, and will likely pass away during the pendency of their residence at Star-Lite. As such, Rebecca and Charles remain subject to Star-Lite's discriminatory rules and regulations, and are fearful that they will again be forbidden from bringing their future service dogs to live with them at Star-Lite, due to Star-Lite's discriminatory rules and regulations.

41. Moreover, the existence of these discriminatory provisions will adversely impact Rebecca and Charles's ability to sell the Dwelling, as any potential purchaser would be provided a copy of Star-Lite's Rules and Regulations, and would have to agree to abide by all of its conditions, including the discriminatory and illegal provisions described above.

42. As noted above, Rebecca and Charles's prior OHR conciliation agreement with the Defendant did not address the legality of Defendant's rules and regulations, particularly as it relates to the discriminatory rules and regulations referenced above that prevent Rebecca and Charles from the full and equal use and enjoyment of Star-Lite's facilities and common areas, and which were not previously challenged by, discussed as part of, or in any way resolved by Rebecca and Charles's prior complaint against the Defendants through Pinellas County OHR.

## COUNT 1:
### VIOLATIONS OF THE FAIR HOUSING ACT

43. Plaintiff repeats and realleges paragraphs 1 through 42 as if fully set forth herein.

44. This Count 1 is brought by Plaintiffs, Rebecca and Charles, against the Defendant, Star-Lite.

45. Defendant Star-Lite is liable to Rebecca and Charles for all injuries caused by the Fair Housing Act violations committed by Defendant Star-Lite, and its agents.

46. Rebecca is disabled within the meaning of the Fair Housing Act, as she suffers from a physical disability, which limits several of her major life activities, including, but not limited to, her ability to walk, balance, and retrieve items, and which causes her chronic pain. Rebecca has a service dog that is necessary to help alleviate her disability.

47. Charles is similarly disabled within the meaning of the Fair Housing Act, as he suffers from a physical disability, which limits several of his major life activities, including, but not limited to, his ability to walk, balance, and retrieve items, and which causes him chronic pain. Charles has a service dog that is necessary to help alleviate his disability.

48. Defendant Star-Lite authorized its agents and employees to act for it when they committed the Fair Housing Act violations alleged herein. Defendant Star-Lite's agents and employees accepted the undertaking of acting on behalf of Defendant when they committed the Fair Housing Act violations alleged herein. Defendant Star-Lite had control over its agents and employees when they committed the Fair Housing Act violations alleged herein.

49. The Fair Housing Act violations alleged herein and committed by Defendant Star-Lite's agents and employees were done while acting within the course and scope of their employ and/or agency with Defendant Star-Lite. Thus, Defendant Star-Lite is vicariously liable for the actions of its agents and employees when they committed the Fair Housing Act violations alleged herein.

50. Defendant Star-Lite has violated the Fair Housing Act by, among other things, harassing, threatening, retaliating and interfering with Rebecca and Charles's exercise and enjoyment of the rights granted to them under the Fair Housing Act; discriminating against them in the provision of services and facilities; making statements, rules and regulations that indicate a

preference, limitation, and discrimination based on handicap; and threatening eviction in violation of the Fair Housing Act.

51. A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendant Star-Lite's aforementioned discriminatory actions and/or omissions.

52. As a result of Defendant Star-Lite's actions, omissions, policies and procedures as described above, Rebecca and Charles suffered, are continuing to suffer, and will in the future suffer irreparable loss and injury including, but not limited to, emotional distress, anger and insult, the deprivation of the full and equal use and enjoyment of Star-Lite's facilities due to their handicap, and a deprivation of their right to a fully integrated community.

53. In engaging in this unlawful conduct described above, Defendant Star-Lite acted with malice intention and/or with reckless or callous indifference to the rights and feelings of Rebecca and Charles in violation of the Fair Housing Act. This is evidenced, in part, by the fact that Defendant Star-Lite is an entity actively engaged in the real estate market, and comprised of individuals who are or should be educated and trained in the requirements of the Fair Housing Act. Despite such education and training, Defendant Star-Lite chose to engage in unlawful discrimination and perpetuated policies and practices that were designed to hamper residents who require service animals.

WHEREFORE, Plaintiffs respectfully request that the Court:

A. declare the actions, omissions, policies, and procedures of Defendant Star-Lite complained of herein to be in violation of the federal Fair Housing Act;

B. enter a permanent injunction enjoining Defendant Star-Lite, its successors, and its servants, agents and employees, and all those acting in concert with it, from discriminating against disabled residents with service animals;

    C. enter a permanent injunction compelling Defendant Star-Lite, its successors, and its servants, agents and employees, and all those acting in concert with it, to adopt policies, procedures and practices, which will ensure that discrimination against disabled residents with service animals does not occur in the future;

    D. award compensatory and punitive damages to Plaintiffs against Defendant Star-Lite to compensate Plaintiffs for, among other things, the emotional distress, anger and insult caused by Defendant Star-Lite's discriminatory actions and statements;

    E. award Plaintiffs their costs and reasonable attorneys' fees in this action; and

    F. award Plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

  Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable in this matter.

              Respectfully submitted,

              Joshua A. Glickman, Esq.
              Florida Bar No. 43994
              josh@sjlawcollective.com
              Shawn A. Heller, Esq.
              Florida Bar No. 46346
              shawn@sjlawcollective.com
              Social Justice Law Collective, PL
              434 Skinner Blvd., #206
              Dunedin, FL 34698
              (202) 709-5744
              (866) 893-0416 (Fax)

              Attorneys for the Plaintiff

              By:  _s/ Shawn A. Heller_
                 Shawn A. Heller, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 18th day of December 2017, which will send a notice of electronic filing to all attorneys of record.

By: *s/ Shawn A. Heller*
Shawn A. Heller, Esq.